UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JOHN HARDY JACKSON,<br><br>    Petitioner,<br><br>vs.<br><br>EXECUTIVE DIRECTOR OF THE DEPARTMENT OF CORRECTIONS OF CALIFORNIA,<br><br>    Respondent. | Case No: C 08-02254 SBA<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

Through counsel, Petitioner John Hardy Jackson ("Jackson") filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he seeks to challenge his California state conviction for child molestation in 2006. The petition is now submitted for the Court's consideration on the merits. For the reasons discussed below, Jackson's petition is DENIED as to all claims.

I. **BACKGROUND**

    A. **FACTUAL OVERVIEW**

The facts in this case were discussed in detail on direct review before the California Court of Appeal and are summarized here only insofar as they are pertinent to the Court's resolution of this petition. See People v. Jackson, No. H030492, 2007 WL 4341370 (Cal. Ct. App. Dec. 13, 2007); Resp't Ex. A at 1-7, Dkt. 10.

Jackson began sexually molesting his stepdaughter, who was in the second or third grade, shortly after he married her mother in 1992. Resp't Ex. A at 1-2. The molestation

began with inappropriate touching and kissing, but later escalated to oral copulation and sexual intercourse. Id. at 1-2. He continued to engage in sexual activity with his stepdaughter until 2004, when she was nearly eighteen-years old. Id. at 2. In addition, Jackson engaged in sexual activity with the family's four foster children, and encouraged his stepdaughter and foster children (collectively "the children") to engage in sexual activity with each other. Id. at 4-6. Jackson showed the children adult pornography and videotaped both his sexual acts with them and their sexual acts with each other. Id. at 5-6.

Jackson's stepdaughter got along well with him because he acted as a buffer between her and her mother, who was the family disciplinarian. Id. at 2. When Jackson and his stepdaughter engaged in less sexual activity, he was not as pleasant to her and would offer her less protection from her mother's anger. Id. at 2-3. The stepdaughter complied with Jackson's sexual requests—and did not tell anyone about them—because she did not want to make him angry. Id. at 3. Although she never feared for her physical safety, she did not want to lose Jackson as a father figure. Id. Nor did she want to lose her foster siblings, and Jackson told her they would be taken away if he went to jail. Id. at 3, 5. When she was nearly eighteen years old, Jackson's stepdaughter finally told her mother about the molestation. Id. at 2. The police began investigating a few days later. See id.

### B. PROCEDURAL HISTORY

The State of California charged Jackson with multiple counts of lewd and lascivious conduct on a child under California Penal Code section 288. Reporter's Transcript ("RT") 26-28, Dkt. 10-1 Ex. D. On June 26, 2006, Jackson, who was represented by counsel, waived his right to a jury trial:

> THE COURT: . . . . I understand that both sides are ready to proceed to trial and that Mr. Jackson wishes to enter a waiver of right to jury trial and have the matter proceed by way of court trial. Is that Correct?
>
> . . . .
>
> THE COURT: Mr. Jackson, do you understand your right to have a trial by jury where 12 impartial citizens listen to the evidence, they determine the facts based on that evidence and then they reach a verdict based on the standard of proof beyond a reasonable doubt? You understand that?

> THE DEFENDANT: Yes, I do.
>
> THE COURT: Your attorney has indicated that you wish to waive your right to a jury trial and instead have <u>the matter</u> tried before the Court. The trial is essentially the same, but instead of having a jury determine the issues, the Court acts as finder of fact as well. Is that your intention?
>
> THE DEFENDANT: Yes.
>
> THE COURT: You understand that all of the other rights attendant to a jury trial, the right to confront and cross examine witnesses, call witnesses yourself, testify if you choose and not testify if you choose not to, remain if you have a court trial?
>
> THE DEFENDANT: Yes.

Id. at 26-27 (emphasis added). Before accepting Jackson's jury waiver, the trial court warned him about his maximum possible sentence under the charged offenses. Id. at 27-28. After Jackson's attorney concurred in the waiver, the trial court announced that "this matter will proceed by way of court trial." Id. at 28.

Following a bench trial, a judge of the Santa Clara County Superior Court found Jackson guilty on ten counts of nonforcible lewd or lascivious acts on a child under California Penal Code section 288(a) and six counts of forcible lewd or lascivious acts under section 288(b). Resp't Ex. A at 1. The court also found true the California Penal Code section 667.61 allegations in counts three through sixteen.[1] Id. at 6-7. The court sentenced Jackson to a term of 222 years to life in prison on July 27, 2006. RT 240.

Jackson appealed four issues to the Sixth Appellate District of the California Court of Appeal: (1) whether sufficient evidence of duress supported his convictions under California Penal Code section 288(b); (2) whether the term "duress" in section 288(b) is unconstitutionally vague; (3) whether sufficient evidence supported the one-strike allegations; and (4) whether his jury waiver was knowing and intelligent. Resp't Ex. A at 7. The California Court of Appeal affirmed Jackson's conviction in an unpublished decision filed on December 13, 2007. See id. at 1, 19. The California Supreme Court summarily denied review on March 26, 2008. See Resp't Ex. C, Dkt. 10.

---

[1] Amendments to California Penal Code sections 288 and 667.61 took effect after Jackson's trial and sentencing. All references to sections 288 and 667.61 are to the respective versions in effect during Jackson's June 2006 trial and July 2006 sentencing.

Jackson filed this federal petition for a writ of habeas corpus in this Court which presents three claims: (1) he did not knowingly and intelligently waive his right to a jury trial; (2) the trial court erred in imposing the one-strike life terms because it did not require the prosecution to prove beyond a reasonable doubt that Jackson did not qualify for probation; and (3) the term "duress" in California Penal Code section 288(b) is unconstitutionally vague. See id. at 6. On October 23, 2008, the Court ordered the Executive Director of the Department of Corrections of California ("Respondent") to show cause why a writ of habeas corpus should not be granted. See Order to Show Cause, Dkt. 5. Respondent filed an answer denying all claims on April 13, 2009. See Answer, Dkt. 9. On August 10, 2009, and now represented by counsel, Jackson filed his traverse to Respondent's answer. See Traverse, Dkt. 16.

Respondent concedes that Jackson's federal petition is both timely under 28 U.S.C. § 2244(d) and exhausted under 28 U.S.C. § 2254(b)(1)(A). See Answer at 2. Therefore, the Court proceeds to the merits of Jackson's claims.

## II.  STANDARD OF REVIEW

This petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. Under AEDPA, a federal court must deny habeas relief with respect to any claim adjudicated on the merits in a state-court proceeding unless the proceeding "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The phrase "clearly established Federal law[] as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta," of the Supreme Court's decisions "as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000). A state court's decision is "contrary to" clearly established federal law if it applies a rule that contradicts the governing law set forth in Supreme Court precedents or if it confronts a set of facts that is materially indistinguishable from a Supreme Court decision but reaches a different result. Brown v. Payton, 544 U.S. 133, 141

(2005).  A state court's decision constitutes an "unreasonable application" of clearly established federal law if it applies a Supreme Court precedent to the facts of a case in an objectively unreasonable manner.  Id.  Habeas petitioners bear the burden of showing that a state court's decision applied some Supreme Court precedent in an objectively unreasonable manner.  Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam).

In determining whether a state court's decision is contrary to, or involves an unreasonable application of, clearly established federal law, courts in this circuit look to the decision of the highest state court to address the merits of the petitioner's claim in a reasoned decision.  See LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000).

## III.   DISCUSSION

### A.   WAIVER OF JURY TRIAL

In his first claim, Jackson argues that his jury waiver was not knowing and intelligent because the trial court gave "no direct advisement of a connection between the right to a jury determination and any matter related to sentencing."  Pet. Attach. 1 at 6, Dkt. 1.  The California Court of Appeal rejected this argument, noting that the information filed against Jackson included allegations that, if found true, made him eligible for one-strike sentences.  Resp't Ex. A at 19.  This holding is neither contrary to, nor an objectively unreasonable application of, clearly established federal law.  See 28 U.S.C. § 2254(d)(1).

#### 1.   Contrary to Clearly Established Federal Law

As noted above, a state court's decision is contrary to clearly established federal law if it contradicts the holdings, as opposed to the dicta, of a Supreme Court precedent in effect when the state court issued its decision.  See Brown, 544 U.S. at 141; Williams, 529 U.S. at 412.  A state-court decision is also contrary to clearly established federal law if it confronts a set of facts that is materially indistinguishable from a Supreme Court precedent but reaches a different result.  See Brown, 544 U.S. at 141.

Jackson argues that Supreme Court precedent clearly establishes that the factual findings necessary to authorize an aggravated term of imprisonment under California's 2006 sentencing scheme are subject to the Sixth Amendment right to trial by jury.  Traverse

at 3. This is a correct statement of the law. It is beyond dispute that Jackson had a right to a jury determination of any fact, except for a prior conviction, that was required to authorize an "enhanced sentence." See Blakely v. Washington, 542 U.S. 296, 305 (2004); see also Cunningham v. California, 549 U.S. 270, 293 (2007); Apprendi v. New Jersey, 530 U.S. 466, 490 (2000). However, the salient issue presented is not whether Jackson had such a right; rather, the issue is whether the decision of the Court of Appeal holding that he knowingly and intelligently waived that right was contrary to clearly established federal law. See Pet. Attach. at 3. Jackson identifies no Supreme Court precedent holding that a blanket waiver consenting to have "the matter" tried to a court is not knowing and intelligent unless it is preceded by a specific advisement that the court will find the facts pertinent to both guilt and sentencing. Cf. Brown, 544 U.S. at 141. Nor does he identify any Supreme Court precedent decided upon materially indistinguishable facts. Cf. id. Hence, Jackson has failed to show that the California Court of Appeal's decision was contrary to clearly established federal law. See id.; 28 U.S.C. § 2254(d)(1).

### 2. Unreasonable Application of Clearly Established Federal Law

Jackson next contends that the Court of Appeal's decision was "an objectively unreasonable application of settled law to the facts of [his] case." Traverse at 3. Under AEDPA's unreasonable application prong, this Court may not grant habeas relief "simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." See Williams, 529 U.S. at 411. Rather, Jackson bears the burden of showing that the state court applied some Supreme Court holding to the facts of his case "in an objectively unreasonable manner." See Woodford, 537 U.S. at 25.

The Court of Appeal held that Jackson's blanket waiver of his right to a jury trial in "the matter" constituted a waiver of his jury rights in both the guilt and sentencing phases. Resp't Ex. A at 19 (citing People v. Jarmon, 2 Cal. App. 4th 1345, 1354-55 (1992)). The Court of Appeal held this waiver was knowing and intelligent because the information placed him on notice that he would be eligible for one-strike enhancements if the court

found him guilty. See id. Jackson argues that the appellate court applied Blakely, which addresses the underlying right and not the conditions of waiver. See. in an objectively unreasonable manner because it failed to consider that—at the time he waived his jury right—the California Supreme Court had held the Sixth Amendment's jury guarantee did not apply to aggravating sentencing facts. See Traverse at 3-4 (citing People v. Black, 35 Cal. 4th 1238 (2005), abrogated by Cunningham, 549 U.S. 270).

There are two fundamental flaws in Jackson's argument. First, the Court of Appeal never purported to apply Blakely. See Resp't Ex. A. at 18-19. Second, even if the court's discussion of Apprendi somehow implicated Blakely, see id. at 18, Jackson fails to show that the Court of Appeal applied Blakely in an objectively unreasonable manner, cf., e.g., Woodford, 537 U.S. at 24-25. He is correct that Blakely entitled him to a jury determination of any fact, aside from a prior conviction, required authorize a sentence enhancement. See 542 U.S. at 305. But the Court of Appeal held that Jackson knowingly and intelligently waived this right—not that he lacked such a right in the first instance. See Resp't Ex. A at 19.

In sum, Jackson fails to present the Court with any decisional authority to reasoned legal analysis demonstrating that the Court of Appeal incorrectly construed Blakely, which addresses the underlying right and not the conditions of waiver. See 542 U.S. at 304-05. Perhaps more fundamentally, Jackson has made no showing that the appellate court's holding is objectively unreasonable under AEDPA's "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." See Woodford, 537 U.S. at 24 (quotation marks and citation omitted).[2] Jackson is not entitled to habeas relief on his first claim. See 28 U.S.C. § 2254(d)(1).

---

[2] In the attachment to his petition, Jackson points to state-court opinions from several states concluding that a waiver of the right to have a jury find sentencing facts is not knowing and intelligent in the absence of a prior advisement. Pet. Attach. 1 at 6-7. This case is different, as the California Court of Appeal held that the trial court's prior advisement adequately encompassed both trial and sentencing facts. See Resp't Ex. A at 19. In any event, the Court declines to address these state cases in detail because they do not apply AEDPA's "highly deferential" standard of review. See Woodford, 537 U.S. at 24.

**B.     ONE-STRIKE SENTENCES**

Jackson argues that all fourteen of his one-strike sentence enhancements under California Penal Code section 667.61 must be reversed because the prosecution did not prove beyond a reasonable doubt that he was ineligible for probation under section 1203.066(d)(1). Traverse at 6. According to Jackson, the trial court had no authority to impose one-strike enhancements under section 667.61 absent a factual finding that he was ineligible for probation. Id. at 8. Therefore, he argues, Apprendi required the prosecution to prove ineligibility beyond a reasonable doubt. See id.

Apprendi makes clear that, with the exception of a prior conviction, any fact required to authorize an increased sentence must be proved beyond a reasonable doubt. See 530 U.S. at 490. The Apprendi rule applies "[w]hether the judicially determined facts require a sentence enhancement or merely allow it." See Blakely, 542 U.S. at 305 n.8 (emphases omitted). Nevertheless, the California Court of Appeal rejected Jackson's argument, holding that the Apprendi line of cases did not apply because section 667.61 authorized the trial court to impose one-strike enhancements without finding any additional sentencing facts. See Resp't Ex. A at 17. As set forth below, this holding is neither contrary to, nor an unreasonable application of, clearly established federal law. See 28 U.S.C. § 2254(d)(1). To the contrary, by all accounts, the appellate court correctly interpreted Apprendi and its progeny.

   1.     **Section 288(b) Enhancements**[3]

California Penal Code section 667.61 provides for a term of fifteen years to life in prison (a "one-strike enhancement") for violations of enumerated offenses committed under specific circumstances. Cal. Penal Code § 667.61(b)-(e). One of the enumerated offenses is a violation of section 288(b). Id. § 667.61(c)(4). A conviction under section 288(b) qualifies for a one-strike enhancement if the defendant committed the offense against more

---

[3] The state trial court applied one-strike sentences to Jackson's convictions under both section 288(a) and section 288(b). The Court separately addresses the enhancements as they apply to each section.

- 8 -

than one victim. Id. § 667.61(e)(5).

Here, the state trial court applied one-strike enhancements under section 667.61 to four of Jackson's six convictions for forcible lewd or lascivious conduct under section 288(b). See RT 223-25, 239. Although Jackson asserts that all fourteen of his one-strike enhancements should be overturned, see Traverse at 6, he fails to show that the enhancements applied to his section 288(b) convictions implicate Apprendi. See id. at 4-10; Pet. at 6; Pet. Attach. 1 at 7-10.

The prosecution proved beyond a reasonable doubt that Jackson violated section 288(b) and secured convictions on all six counts charged under that section. See RT 223-25. As to the more than one victim circumstance, neither Jackson's petition nor his traverse alleges that the prosecution failed to prove multiple victims beyond a reasonable doubt. See Pet. at 6; Pet. Attach. 1 at 7-10; Traverse at 4-10. Rather, Jackson argues that the prosecution failed to prove his ineligibility for probation beyond a reasonable doubt—a claim relevant only to his section 288(a) convictions for nonforcible lewd or lascivious conduct. See Pet. at 6; Pet. Attach. 1 at 8; Traverse at 6. Having failed to show that the four one-strike enhancements applied to his section 288(b) convictions implicate Apprendi, Jackson cannot show that the Court of Appeal's affirmance of these enhancements was contrary to, or an unreasonable application of, clearly established federal law. See 28 U.S.C. § 2254(d)(1).

### 2. Section 288(a) Enhancements

The state trial court also applied one-strike enhancements under California Penal Code section 667.61 to Jackson's ten nonforcible lewd or lascivious conduct convictions under section 288(a). RT 225-29, 239-40. Section 667.61 authorizes a one-strike enhancement for a conviction under section 288(a), "unless the defendant qualifies for

1  probation under subdivision (c) of Section 1203.066." Cal. Penal Code § 667.61(c)(7).[4]
2  Section 1203.066(d)(1) provides four conditions that a person convicted under section 288
3  must meet in order to be eligible for probation. See Cal. Penal Code § 1203.066(d)(1).
4        Jackson argues that section 667.61(c)(7) required the trial court to find that he was
5  not eligible for probation in order to authorize one-strike enhancements and that Apprendi
6  therefore required the prosecution to prove ineligibility beyond a reasonable doubt.
7  Traverse at 6-8. He further contends the prosecution failed to meet that burden of proof.
8  Id. at 7. The California Court of Appeal rejected Jackson's argument, holding that section
9  667.61(c)(7) authorizes a one-strike enhancement for a conviction under section 288(a)
10 without requiring any factual findings relating to probation eligibility. See Resp't Ex. A at
11 16-17. The court reasoned that probation is an act of clemency that gives a trial court
12 discretion to depart downward from an otherwise authorized sentence. See id. at 17. Such
13 reductions, the court held, are not subject to the rule set forth in the Apprendi line of cases.
14 See id. (quoting People v. Benitez, 127 Cal. App. 4th 1274, 1278 (2005)). This holding is
15 not contrary to the holdings in Apprendi and its progeny. See 28 U.S.C. § 2254(d)(1). Nor
16 is it an unreasonable application of those decisions. See id.
17       The plain terms of Section 667.61 authorize trial courts to apply a one-strike
18 enhancement to section 288(a) convictions "unless the defendant qualifies for probation
19 under subdivision (c) of Section 1203.066." Cal. Penal Code § 667.61(c)(7). Section
20 1203.066 provides that a person convicted under section 288 "may be granted" probation
21 only if he or she meets four conditions. See Cal. Penal Code § 1203.066(d)(1). The
22 California Supreme Court has noted that imprisonment is mandatory for section 288
23 violations unless the "limited exception" in section 1203.066(d)(1) applies. See People v.
24 Wutzke, 28 Cal. 4th 923, 932 (2002). Defendants, not the prosecution, bear the burden of
25

26     [4] Both parties agree that section 667.61(c)(7)'s references to section 1203.066(c) refers to language codified in section 1203.066(d)(1) at the time of Jackson's trial and
27 sentencing, though Jackson quotes a version in effect prior to his trial. See Resp't Answer Mem. at 8, Dkt. 9-1; Traverse at 5-6. The Court refers to the version of section
28 1203.066(d)(1) in effect during Jackson's trial and sentencing.

1 establishing that they meet all of the criteria authorizing this limited exception. See id.; see
2 also People v. McLaughlin, 203 Cal. App. 3d 1037, 1039 (1988) ("In enacting section
3 1203.066 it appears that the Legislature intended that state prison be the sentencing norm in
4 child molestation cases[] meeting the criteria in subdivision (a)[] and that the defendant
5 bear the burden of persuading the court to depart from that norm by granting probation.").

6     Given the plain language of section 667.61(c)(7) and the California Supreme Court's
7 holding that defendants bear the burden of establishing probation eligibility, it is apparent
8 that a conviction under section 288(a) presumptively authorizes a one-strike enhancement.
9 See Cal. Penal Code § 667.61(c)(7); Wutzke, 28 Cal. 4th at 932. Thus, despite Jackson's
10 claim to the contrary, the trial court was not required to find Jackson ineligible for
11 probation in order to apply the enhancement. See Cal. Penal Code § 667.61(c)(7); Wutzke,
12 28 Cal. 4th at 932. In the absence of any factual finding, the presumptive enhancement
13 applied.

14     In short, the Apprendi line of cases applies only where the trial court must find some
15 fact to authorize an increased sentence. See 530 U.S. at 490; Cunningham, 549 U.S. at 293;
16 Blakely, 542 U.S. at 305. The Court of Appeal held that these decisions do not apply to
17 this case because section 667.61 authorized the trial court to apply the presumptive one-
18 strike enhancements without finding any sentencing facts. Resp't Ex. A at 17. The Court
19 agrees. Jackson is not entitled to habeas relief on his second claim. See 28 U.S.C. §
20 2254(d)(1).

21     **C.**     **VOID-FOR-VAGUENESS DOCTRINE**

22     In his third and final claim, Jackson argues that the prosecution pursued his
23 convictions on counts one through six (the "section 288(b) counts") on a theory of duress.
24 Traverse at 10. He contends the term "duress" is unconstitutionally vague insofar as it is
25 understood to include "hardship," and he seeks habeas relief on that basis. Id. at 12.
26 Specifically, he claims the term "hardship" could encompass countless minor discomforts
27 like a threat to withhold a child's allowance. Pet. Attach. 1 at 12 (citing People v. Leal, 33
28 Cal. 4th 999, 1012 (2004) (Kennard, J., dissenting)).

The void-for-vagueness doctrine requires that a penal statute define the criminal offense "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Gonzales v. Carhart, 550 U.S. 124, 148-49 (2007). Vague laws create two distinct problems. See Grayned v. City of Rockford, 408 U.S. 104, 108-09 (1972). First, they may "trap" the innocent by failing to provide fair warning. Id. at 108. Second, they impermissibly delegate policy matters to police, judges, and juries for an "ad hoc and subjective" resolution. Id. at 109.

The statute at issue here, California Penal Code section 288(b), sets forth the punishment for anyone who violates section 288(a) "by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person." (emphasis added). The California Supreme Court has endorsed a definition of "duress" used in the context of section 288 as "a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted." Leal, 33 Cal. 4th at 1004 (emphasis added) (quoting People v. Pitmon, 170 Cal. App. 3d 38, 50 (1985)); see also CALCRIM 1111.

The California Court of Appeal rejected Jackson's contention that "duress" is unconstitutionally vague as applied to the section 288(b) counts. Resp't Ex. A at 12-13. The court reasoned that one could understand the scope of "duress" by referencing the definition of that term adopted by the California Court of Appeal in Pitmon and endorsed by the California Supreme Court in Leal. See id. at 13. In light of California's long application of the Pitmon definition, the court held that section 288(a) was not so vague that Jackson did not know what conduct it prohibited. See id. As discussed below, this holding is neither contrary to, nor an unreasonable application of, clearly established federal law. See 28 U.S.C. § 2254(d)(1).

### 1. Contrary to Clearly Established Federal Law

Jackson identifies no United States Supreme Court precedent holding that "duress" is unconstitutionally vague as applied in California Penal Code section 288(b) or any materially indistinguishable statute.[5]  Cf. Brown, 544 U.S. at 141 ("A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result.").  Nor has he identified any Supreme Court precedent holding that "hardship" is unconstitutionally vague.  Cf. id.  Therefore, Jackson failed to show that the California Court of Appeal's decision is contrary to clearly established federal law, see id, and he must base his claim on AEDPA's unreasonable application prong, see 28 U.S.C. § 2254(d)(1).

### 2. Unreasonable Application of Clearly Established Federal Law

Jackson's void-for-vagueness argument fairs no better under AEDPA's unreasonable application prong.  As an initial matter, Jackson fails to make clear which Supreme Court holding he believes the California Court of Appeal applied in an objectively unreasonable manner.  Cf. Woodford, 537 U.S. at 25 (". . . it is the habeas applicant's burden to show that the state court applied [a Supreme Court precedent] to the facts of his case in an objectively unreasonable manner.").  He never mentions United States v. Lanier, 520 U.S. 259 (1997), see Pet. at 6; Pet. Attach. 1 at 11-13; Traverse at 10-13, which is the only void-for-vagueness Supreme Court decision the California Court of Appeal purported to apply, see Resp't Ex. A at 12-13.

AEDPA's unreasonable application prong applies where the state court "correctly identifies the governing legal principle from [Supreme Court] decisions but unreasonably applies it to the facts of the particular case."  Bell v. Cone, 535 U.S. 685, 694 (2002).  The implication of this rule, it seems, is that a state court cannot apply in an objectively

---

[5] The Court assumes, without deciding, that the prosecution secured Jackson's conviction under a theory of duress—specifically a theory of duress dependent on the "hardship" prong of the definition endorsed in Leal, 33 Cal. 4th at 1004.

unreasonable manner any Supreme Court precedent that it never purports to apply at all. See id. Notwithstanding this concern, a close examination of both Supreme Court decisions that Jackson does cite in support of his void-for-vagueness claim reveals that the California Court of Appeal's decision was not objectively unreasonable.

Jackson first cites to the Supreme Court's 1972 decision in Grayned, 408 U.S. 104. See Pet. at 6; Pet. Attach. 1 at 12; Traverse at 12. In Grayned, the Court examined the vagueness of an anti-noise ordinance in place in Rockford, Illinois. See 408 U.S. at 107-14. The ordinance prohibited the willful making or assistance in the making of any noise or diversion which "disturbs or tends to disturb the peace or good order" of a school. Id. at 107-08. Although the Court expressed concern that vague statutes abutting upon "sensitive areas of basic First Amendment freedoms" likely will inhibit the exercise of those fundamental freedoms, it upheld Rockford's anti-noise ordinance. See id. at 109. Because the ordinance prescribed the circumstances which would "tend to disturb" a school—noise adjacent to the school's location during school hours that disrupts normal school activities—the Court concluded that "it [was] clear what the ordinance as a whole prohibit[ed]." Id. at 110-11.

Jackson next cites to City of Chicago v. Morales, 527 U.S. 41 (1999). See Pet. Attach. 1 at 12; Traverse at 11. In Morales, the Court examined a Chicago criminal ordinance with four elements: (1) a police officer must reasonably believe one of two or more persons in a public place is a criminal street gang member; (2) the person must be loitering, defined as remaining in any one place with no apparent purpose; (3) the officer must order all persons to disperse; (4) a person must disobey the officer's order. See id. at 47. In the majority decision, the Court held Chicago's ordinance was unconstitutionally vague because it failed to provide sufficient guidelines to govern law enforcement. Id. at

1  60.[6] In reaching this conclusion, the Court noted that the Illinois Supreme Court interpreted
2  the ordinance as providing police officers "absolute discretion" to decide what activities
3  constituted loitering. Id. at 61. Such unchecked discretion, coupled with the inherently
4  subjective determination of whether a person had an "apparent purpose," left the ordinance
5  unconstitutionally vague. See id. 61-64.

6  Neither Grayned nor Morales support the conclusion that the Court of Appeal's
7  decision in this case was objectively unreasonable. Just as the ordinance at issue in
8  Grayned prescribed circumstances giving substance to the vague phrase "tends to disturb,"
9  see 408 U.S. at 110-11, California has given substance to the terms "duress" and
10 "hardship," see Cal. Penal Code § 288(b); Leal, 33 Cal. 4th 1004. The California Supreme
11 Court endorses a definition of "duress" as "a direct or implied threat of force, violence,
12 danger, hardship or retribution sufficient to coerce a reasonable person of ordinary
13 susceptibilities to (1) perform an act which otherwise would not have been performed or,
14 (2) acquiesce in an act to which one otherwise would not have submitted." Leal, 33 Cal.
15 4th at 1004 (quoting Pitmon, 170 Cal. App. 3d at 50). The term "hardship" takes its
16 meaning in the context of the terms listed beside it: threat of force, violence, danger, and
17 retribution. See id. Those terms indicate a magnitude of hardship beyond the petty,
18 amorphous hardships that Jackson raises. See Pet. Attach. 1 at 12; Traverse at 11.

19 Furthermore, as this Court has noted in the past, the California Court of Appeal has
20 held that "duress" must be evaluated in light of the totality of the circumstances. See Liem
21 v. Mendoza-Powers, No. C 05-0514 CW, 2007 WL 1176633, at *5 (N.D. Cal. Apr. 20,
22 2007) (citing People v. Cochran, 103 Cal. App. 4th 8, 14 (2002)). In duress cases, the
23 totality of the circumstances includes the age of the victim, the victim's relationship with
24 the perpetrator, and—of particular relevance to this case—"warnings to the victim that

---

[6] In the portion of the opinion Jackson cites—a portion carrying only three votes—Justice Stevens concluded that the prohibition against remaining in any one place "with no apparent purpose" was also unconstitutionally vague because it provided no standard of conduct to which members of the public could conform their behavior. See Morales, 527 U.S. at 56-60.

1  revealing the molestation would result in jeopardizing the family." See Cochran, 103 Cal.
2  App. 4th at 14. California's efforts to give substance to the terms "duress" and "hardship"
3  make section 288(b) more analogous to the ordinance the Court upheld in Grayned and less
4  like the ordinance entrusting "absolute discretion" in law enforcement that the Court struck
5  down in Morales. See Grayned, 408 U.S. at 110-11; Morales, 527 U.S. at 60-61.[7]

6      Having failed to establish that the California Court of Appeal's decision is either
7  contrary to or an unreasonable application of clearly established federal law, Jackson is not
8  entitled to habeas relief on his final claim. See 28 U.S.C. § 2254(d)(1).

9      **D.**    **CERTIFICATE OF APPEALABILITY**

10      The federal rules governing habeas cases brought by state prisoners require a district
11  court denying a habeas petition to either grant or deny a certificate of appealability
12  ("COA") in its ruling. See Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll.
13  § 2254 (effective December 1, 2009). The Court declines to issue a COA in this case, as
14  Jackson has not demonstrated that "jurists of reason would find it debatable whether the
15  petition states a valid claim of the denial of a constitutional right and that jurists of reason
16  would find it debatable whether the district court was correct in its procedural ruling."
17  Slack v. McDaniel, 529 U.S. 473, 484 (2000).

18  **IV.**    **CONCLUSION**

19      For the reasons stated above,
20      IT IS HEREBY ORDERED THAT Jackson's petition for a writ of habeas corpus is
21  DENIED as to all claims. The Court declines to issue a COA. The Clerk of the Court shall
22  enter judgment and close the file.

---

27      [7] It is worth noting that the Court upheld the anti-noise ordinance at issue in Grayned even though laws touching on conduct protected in the First Amendment raise special
28  vagueness concerns—concerns clearly absent here. See 408 U.S. at 109.

1 | IT IS SO ORDERED.

Dated: September 30, 2011

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge